UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOVANNY RODRIGUEZ,

               Movant,

        -v.-

UNITED STATES OF AMERICA,

               Respondent.

20 Civ. 9097 (JFK)

11 Cr. 755-3 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:[1]

    This Order resolves several outstanding motions that were filed by Movant-Defendant Jovanny Rodriguez after the transfer of his criminal case from Judge John F. Keenan to this Court.  The underlying criminal conduct for which Mr. Rodriguez was prosecuted — his participation in a violent armed robbery crew that targeted drug dealers and legitimate business owners over a period of years — as well as the complex procedural history of the prosecution, are detailed in numerous prior opinions, familiarity with which is assumed. *See, e.g., United States* v. *Rodriguez*, No. 11 Cr. 755 (JFK), 2014 WL 715614 (S.D.N.Y. Feb. 24, 2014) (opinion and order denying motions for judgment of acquittal and for new trial); *United States* v. *Rodriguez*, 761 F. App'x 53 (2d Cir.) (summary order) (opinion affirming conviction), *cert. denied*, 140 S. Ct. 473 (2019); *Rodriguez* v. *Derienzo*, No. 20 Civ. 87 (CM), 2020 WL 615052 (S.D.N.Y. Feb. 7, 2020) (opinion and order dismissing *pro se* complaint seeking

---

[1]    Unless otherwise indicated, references to docket entries are to the docket in Mr. Rodriguez's criminal case, No. 11 Cr. 755-3 (KPF), and references to page numbers in Mr. Rodriguez's submissions are to the numbers supplied by this Court's electronic case filing ("ECF") system.

prosecution of law enforcement officer who testified before grand jury); *United States* v. *Rodriguez*, No. 11 Cr. 755 (JFK), 2021 WL 37689 (S.D.N.Y. Jan. 5, 2021) (opinion and order denying motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and, in the alternative, for bail) ("*Rodriguez 3582 Opinion*"), *motion for reconsideration denied*, 2022 WL 2801009 (S.D.N.Y. July 18, 2022) ("*Rodriguez 3582 Reconsideration Opinion*"); *United States* v. *Rodriguez*, No. 11 Cr. 755 (JFK), 2022 WL 2805536 (S.D.N.Y. July 18, 2022) (opinion and order denying motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and denying certificate of appealability) ("*Rodriguez 2255 Opinion*"); *United States* v. *Rodriguez*, No. 22-1684 (2d Cir. Dec. 15, 2022) (denying motion for certificate of appealability).

Because the instant motions are largely duplicative of prior motions that Mr. Rodriguez has made, the Court has not requested supplemental responses from the Government.  For the reasons set forth in the remainder of this Order, the Court denies Mr. Rodriguez's most recent motions.

## A.    The Court Denies Mr. Rodriguez's Motion to Vacate Its Prior Order Denying His Motion Pursuant to 28 U.S.C. § 2255

### 1.    Relevant Facts

In October 2013, Mr. Rodriguez was convicted after a jury trial of robbery, kidnapping, narcotics, and firearms offenses, for which he was ultimately sentenced to an aggregate term of life plus 32 years' imprisonment. (Dkt. #265 (judgment)).  In October 2020, Mr. Rodriguez moved to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (Dkt. #450).[2]
Broadly speaking, Mr. Rodriguez claimed ineffective assistance on the part of
his trial counsel and misconduct on the part of one of the Government's
witnesses.  As is customary in this District, Judge Keenan, to whom this case
was then assigned, ordered that Mr. Rodriguez's trial counsel submit an
affidavit responding to Mr. Rodriguez's claims of ineffectiveness.  (Dkt. #517
(order), 527 (affidavit)).  While accepting counsel's affidavit, Judge Keenan
elected not to hold a plenary hearing on the Section 2255 motion, concluding
that "the motion and the files and records of the case conclusively show[ed]
that" Mr. Rodriguez was not entitled to any relief.  *Rodriguez 2255 Opinion*,
2022 WL 2805536, at *4 (quoting 28 U.S.C. § 2255(b)).

Ultimately, Judge Keenan found that Mr. Rodriguez had failed to
demonstrate ineffectiveness on the part of his trial counsel, and that his claims
of prosecutorial misconduct were both procedurally defaulted and deficient on
the merits.  *Rodriguez 2255 Opinion*, 2022 WL 2805536, at *4-9.  At the
conclusion of his opinion, Judge Keenan declined to issue a certificate of
appealability, finding that "[Mr.] Rodriguez has not made a substantial showing
of a denial of a constitutional right." *Id.* at *9.  Mr. Rodriguez moved for a
certificate of appealability from the United States Court of Appeals for the
Second Circuit, which denied his motion and dismissed his appeal.  (Dkt. #560
(mandate)).

---

[2]      Motions filed pursuant to 28 U.S.C. § 2255 are sometimes referred to as federal habeas
petitions.  This Court uses both terms interchangeably in this Order.

Mr. Rodriguez now moves to vacate Judge Keenan's order denying his Section 2255 motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, claiming that (i) Judge Keenan's decision was predicated on a mistake of law and (ii) the Supreme Court has recognized that a motion under Rule 60(b)(1) is the proper vehicle for challenging an order predicated on a mistake of law. (Dkt. #565 (citing *Kemp* v. *United States*, 596 U.S. 528 (2022))). Acknowledging that Rule 60(b) may only be invoked in the case of a challenge to the integrity of the federal habeas proceeding itself, Mr. Rodriguez proffers two such challenges, namely, challenges to: (i) Judge Keenan's decision not to hold a plenary hearing on the Section 2255 motion and (ii) Judge Keenan's refusal to issue a certificate of appealability. (*Id.* at 10-20). As set forth in the remainder of this section, Mr. Rodriguez has identified no basis for Rule 60(b) relief.

### 2.    Applicable Law

Federal Rule of Civil Procedure 60(b) states that

> [o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A motion made under Rule 60(b)(1), (2), or (3) "must be made within a reasonable time," but in any event "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Motions brought pursuant to Rule 60(b)(4), (5), or (6), on the other hand, need only be "made within a reasonable time." *Id.*

Mr. Rodriguez has already filed a Section 2255 motion that was denied by Judge Keenan. As potentially relevant here, 28 U.S.C. § 2255(h) provides that "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals." 28 U.S.C. § 2244(b)(3)(A) in turn provides that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." Where a district court is presented with a second or successive motion under 28 U.S.C. § 2255, it must transfer that application to the Court of Appeals. *See Liriano* v. *United States*, 95 F.3d 119, 123 (2d Cir. 1996) (*per curiam*).

In *Harris* v. *United States*, 367 F.3d 74 (2d Cir. 2004), the Second Circuit provided guidance on whether a motion attacking the judgment in a Section 2255 proceeding can properly be made under Rule 60(b) or whether it is in fact a second or successive motion under 28 U.S.C. § 2255. *Harris* held that where a purported Rule 60(b) motion actually "attacks the underlying conviction," then the district court may either "treat the Rule 60(b) motion as 'a second or successive' habeas petition" and transfer it to the Court of Appeals for possible

certification, or "deny the portion of the motion attacking the underlying conviction 'as beyond the scope of Rule 60(b).'" *Id.* at 82 (emphasis in original) (quoting *Gitten* v. *United States*, 311 F.3d 529, 534 (2d Cir. 2004)). However, "a Rule 60(b) motion that *attacks the integrity* of a previous habeas proceeding" is a proper Rule 60(b) motion and should be disposed of as such. *Id.* (emphasis in original) (citing *Rodriguez* v. *Mitchell*, 252 F.3d 191, 200 (2d Cir. 2001)); *see also Gonzalez* v. *Crosby*, 545 U.S. 524, 529 (2005) (distinguishing Rule 60(b) motions that challenge "the substance of the federal court's resolution of a claim on the merits," which the Court found to be successive habeas petitions, from those that challenge "some defect in the integrity of the federal habeas proceedings," which the Court found to be permissible under Rule 60(b)).

More recently, the Supreme Court has recognized that judicial errors of law are "mistakes" that can be redressed pursuant to Rule 60(b)(1). *See Kemp*, 596 U.S. at 530. This Court has not found cases from courts in this Circuit discussing the interplay of *Kemp* with the *Gonzalez/Rodriguez/Gitten* line of cases, although it has found decisions from other federal courts that have addressed analogous issues. *See, e.g.*, *Rodriguez* v. *Allison*, No. 21 Civ. 1395 (JLS) (AHG), 2024 WL 3896007, at *4 n.6 (S.D. Cal. Aug. 21, 2024) (citing *Kemp* for proposition that "[a] court's legal error can provide grounds for relief from final judgment under Rule 60(b)(1)," but that such a motion must be made "within a reasonable time," which "may not exceed one year"); *United States* v. *Duerson*, No. 19 Cr. 130 (DCR), 2024 WL 3510861, at *3 (E.D. Ky. July 23, 2024) (same).

### 3.    Analysis

Assuming for the purposes of argument that Mr. Rodriguez's Rule 60(b)
motion (i) was timely filed and (ii) challenges his prior habeas proceeding and
not his conviction, the motion still fails because Mr. Rodriguez does not identify
a legal error on Judge Keenan's part that undermined the integrity of the
habeas proceeding.  Beginning with Mr. Rodriguez's claims regarding a
hearing, "[c]ourts within this Circuit have split on whether a claim challenging
a district court's failure to hold an evidentiary hearing before denying a habeas
petition attacks the integrity of the habeas proceedings," as distinguished from
the underlying conviction.  *Gross* v. *Graham*, No. 14 Civ. 768 (JKS), at *3
(N.D.N.Y. Aug. 27, 2018) (collecting cases); *see also Chen* v. *United States*,
No. 03 Cr. 734-4 (DAB), 2016 WL 519617, at *4 (S.D.N.Y. Feb. 3, 2016)
(rejecting claim that failure to hold evidentiary hearing impacted the integrity of
the habeas proceeding; "Section 2255 petitioners are not entitled to an
evidentiary hearing as a matter of right; instead, a Section 2255 petitioner
must state a 'plausible claim' for relief before the Court will hold an evidentiary
hearing on an ineffective assistance of counsel claim.").  In any event, Judge
Keenan's decision to obtain a sworn statement from trial counsel in lieu of a
formal hearing was squarely in line with the Second Circuit's precedent.  *See,
e.g.*, *Chang* v. *United States*, 250 F.3d 79, 85-86 (2d Cir. 2001) ("It was,
therefore, within the district court's discretion to choose a middle road
[requiring a detailed affidavit from counsel] that avoided the delay, the needless
expenditure of judicial resources, the burden on trial counsel and the

government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing."); *cf. Thomas* v. *United States*, 93 F.4th 62, 66 (2d Cir. 2024) ("In many cases, the district court may discharge this obligation by accepting affidavits from the defendant's prior counsel, including those filed as part of the government's opposition papers.").

Nor does Judge Keenan's decision not to grant a certificate of appealability warrant relief under Rule 60(b).  (Dkt. #565 at 18 (arguing that Judge Keenan erred in declining to issue a certificate of appealability where the claim involved the ineffective assistance of counsel, which "is the denial of a constitutional right")).  Section 2253 makes plain that a certificate of appealability is not automatic, but rather may be issued only when the movant has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253.  While Mr. Rodriguez's claim of ineffectiveness may have related to his constitutional rights under the Sixth Amendment, his failure to make a sufficient factual showing that these rights had been violated was the reason why Judge Keenan declined to issue a certificate of appealability — a conclusion that was also reached by the Second Circuit.  (Dkt. #560).  For all these reasons, Mr. Rodriguez has failed to show any entitlement to relief under Rule 60(b), and the Court denies the motion.

**B.    The Court Denies Mr. Rodriguez's Renewed Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)**

    **1.    Relevant Facts**

Mr. Rodriguez has also filed a second motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), also known as the compassionate release provision.  Previously, in October 2020, Mr. Rodriguez had moved for compassionate release, and in the alternative for bail pending the resolution of his Section 2255 motion.  (Dkt. #448).  The proffered bases for relief were Mr. Rodriguez's medical conditions, which he argued were subject to exacerbation by the ongoing COVID-19 pandemic, and his supposed "accessorial role" in his offenses of conviction.  (*Id.* at 2-4.)  After hearing from the Government (Dkt. #453), Judge Keenan denied the motion on January 5, 2021, finding that (i) Mr. Rodriguez's age and medical conditions did not qualify as "extraordinary and compelling circumstances" warranting his release, and (ii) even had he made such a showing, the Court's analysis of the factors listed in 18 U.S.C. § 3553(a) counseled against release.  *Rodriguez 3582 Opinion*, 2021 WL 37689, at *4 ("Indeed, Rodriguez's offense conduct is among the most serious and reprehensible the Court has encountered: Rodriguez engaged in years-long kidnapping and robbery conspiracy that involved extraordinary acts of violence and brutality, the proof of which was 'overwhelming.'  For the same reasons that necessitated Rodriguez's life sentence, which were discussed at his sentencing and are incorporated by reference here, the Court finds that

modifying Rodriguez's term of incarceration would disserve the above important sentencing factors.").

In 2023, Mr. Rodriguez renewed his motion for compassionate release, again citing the dangers to his health posed by the COVID-19 pandemic and general medical issues, and adding claims based on the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, and on changes in his family circumstances. (Dkt. #556, 557).  Among other things, Mr. Rodriguez requests that his counts of conviction under 18 U.S.C. § 924(c), be vacated because of the First Step Act's general proscription of the stacking of sentences for multiple Section 924(c) counts.  (*See, e.g.*, Dkt. #556 at 6).  Mr. Rodriguez also argues that a reduction is warranted because his sentence was disproportionate to those of his co-defendants who cooperated or pleaded guilty prior to trial.  (*Id.* at 7).  Finally, Mr. Rodriguez notes that his wife is ill, and that he has a minor child who requires his attention.  (*Id.* at 8).  The Court has communicated with counsel at the federal Bureau of Prisons (the "BOP"), who has (i) confirmed Mr. Rodriguez's exhaustion of administrative remedies for his most recent requests and (ii) forwarded to the Court Mr. Rodriguez's medical records for 2023 and 2024.

### 2.    Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant.  A defendant may move under Section 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative

rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under Section 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary order). The Second Circuit has summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see* [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir.

> 2021)].  Section 3553(a), in turn, lists numerous factors
> a court must review when imposing a sentence.  These
> include, as most relevant here, "the nature and
> circumstances of the offense and the history and
> characteristics of the defendant"; "the need for the
> sentence imposed … to reflect the seriousness of the
> offense, to promote respect for the law, and to provide
> just punishment for the offense"; "the need for the
> sentence imposed … to provide the defendant with …
> correctional treatment in the most effective manner";
> and "the need to avoid unwarranted sentence
> disparities among defendants with similar records who
> have been found guilty of similar conduct."  18 U.S.C.
> § 3553(a).  Third, the inmate must demonstrate that his
> proffered circumstances are indeed "extraordinary and
> compelling" such that, in light of these § 3553(a) factors,
> a sentence reduction is justified under § 3582(c)(1)(A)
> and would not simply constitute second-guessing of the
> sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v.

*Halvon*, 26 F.4th 566, 570 (2d Cir. 2022).  The district court's discretion

includes the power to reduce, as well as to eliminate, the remaining term of a

defendant's sentence.  *See Brooker*, 976 F.3d at 237.

In Amendment 821 to the United States Sentencing Guidelines (the

"Guidelines" or "U.S.S.G."), effective as of November 1, 2023, and later made

retroactive, the Sentencing Commission amended the policy statement

contained at U.S.S.G. § 1B1.13 in order to provide guidance as to what

constitutes extraordinary and compelling circumstances in defendant-initiated

(as distinguished from BOP-initiated) compassionate release requests.  This

amendment "now controls the analysis of a compassionate release motion,

however initiated."  *United States* v. *Lopez*, No. 16 Cr. 317-22 (PAE), 2024 WL

964593, at *2 (S.D.N.Y. Mar. 5, 2024).

12

As relevant here, courts may consider the medical circumstances of a defendant, including whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death.  U.S.S.G. § 1B1.13(b)(1)(C).  Courts may also consider whether the defendant is being held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner."  *Id.* § 1B1.13(b)(1)(D).  The amended policy statement also recognizes that family circumstances may constitute extraordinary and compelling reasons, as, for example, where the defendant is the "only available caregiver" for an immediate family member.  *See id.* § 1B1.13(b)(3).

Finally, the amended U.S.S.G. § 1B1.13 recognizes that extraordinary and compelling circumstances may be found where a defendant is serving an "unusually long sentence":

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time

the motion is filed, and after full consideration of the
defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6); *see also id.* § 1B1.13(b)(5) (noting that extraordinary
and compelling circumstances may be found where "[t]he defendant presents
any other circumstance or combination of circumstances that, when
considered by themselves or together with any of the reasons described in
paragraphs (1) through (4), are similar in gravity to those described in
paragraphs (1) through (4).").

The "existence of 'extraordinary and compelling reasons' for a reduction
does not mean that a district court must release the defendant." *United States*
v. *Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020). Even if a court finds that
a defendant has established an extraordinary and compelling reason for a
reduction in sentence, it must still consider the Section 3553(a) factors. *See* 18
U.S.C. § 3582(c)(1)(A)(i). "The defendant has the burden to show he is entitled
to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC),
2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*,
970 F.2d 1017, 1026 (2d Cir. 1992)).

   3.   **Analysis**

      a.   **Mr. Rodriguez Has Not Identified an Extraordinary and
            Compelling Circumstance**

The Court finds that Mr. Rodriguez has failed to identify an extraordinary
and compelling circumstance warranting a reduction in sentence. To begin,
Mr. Rodriguez argues that his medical issues, which include high blood
pressure, shortness of breath, and obesity, qualify as extraordinary and

compelling.  (Dkt. #556 at 7).[3]  It is true that the Sentencing Commission has recognized that medical issues can qualify as extraordinary and compelling where, for example, the circumstances involve a "serious" or "deteriorating" physical or mental condition that "substantially diminishes the ability of the defendant to provide self-care" within the facility, as well as conditions that require "long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."  U.S.S.G. § 1B1.13(b)(1).  Mr. Rodriguez has not demonstrated that his medical conditions are sufficiently serious, nor has he demonstrated that he is not receiving proper medical care for them.  To the contrary, the Court has reviewed with care several years' worth of medical records produced by the BOP, which records confirm that Mr. Rodriguez has received timely and appropriate care for any medical issues that he has disclosed.

Relatedly, Mr. Rodriguez claims that he is "in a high category for complications if he is infected by COVID-19 due to high blood pressure, shortness of breath and [o]besity."  (Dkt. #556 at 7).  As noted above, the Sentencing Commission has recognized circumstances in which a public health

---

[3]     The most recent medical records indicate the following current medical issues: obesity, hypertension, hyperlipidemia, allergic rhinitis, a viral wort, and certain dental and mental health issues.  (*See* 2024 Medical Records).  Mr. Rodriguez claims to have suffered a "small stroke" in 2023 (Dkt. #556 at 6), but his medical records for 2023 and 2024 contain no references to a stroke, and in fact contain repeated answers of "No" to the question of whether Mr. Rodriguez ever suffered from a "CVA" (a cerebrovascular accident, the medical term for a stroke).  (*See, e.g.*, Medical Records dated November 30, 2023, November 27, 2023, October 3, 2023).  There are records reflecting Mr. Rodriguez's transfer to an offsite medical facility on March 15, 2023, to receive testing and treatment for unspecified chest pain, but subsequent records contain no indication of current issues in this regard.  (*See* Medical Records for March 15, 2023).

emergency can present an extraordinary and compelling reason under Section 3582(c)(1)(A)(i), but even there a defendant must demonstrate that the facility is at "imminent risk" of being affected by "an outbreak of infectious disease" or an "ongoing public health emergency"; that the defendant is at an "increased risk of suffering severe medical complications or death" due to "personal health factors and custodial status"; and that "such risk cannot be adequately mitigated in a timely manner." *See* U.S.S.G. § 1B1.13(b)(D).

At present, there is no outbreak of COVID-19 at the Federal Correctional Complex in Coleman, Florida, where Mr. Rodriguez is housed. To the contrary, 4,226 inmates of a total population of 6,332 are fully inoculated, and the facility recites no open cases at this time. *See* BOP, *Inmate COVID-19 Data*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed August 26, 2024). Mr. Rodriguez is among the inoculated inmates, and courts in this District have repeatedly found that "the risk of COVID-19 for a vaccinated individual is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated." *United States* v. *Angulo-Aguirre*, No. 07 Cr. 387-03 (CM), 2022 WL 2156666, at *3 (S.D.N.Y. June 15, 2022) (collecting cases).

The Court acknowledges that Mr. Rodriguez's obesity, and possibly his hypertension, may put him at an increased risk of experiencing severe illness or death were he to contract COVID-19. *See* Centers for Disease Control and Prevention ("CDC"), *People with Certain Medical Conditions and COVID-19 Risk Factors*, https://www.cdc.gov/covid/risk-

factors/?CDC_AAref_Val=https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed August 26, 2024).  On balance, however, this Court concludes that the danger that Mr. Rodriguez faces from infection with COVID-19, even accounting for his proffered risk factors, does not alone or in combination with other factors amount to an extraordinary and compelling reason for granting compassionate release.

Separately, Mr. Rodriguez notes that his wife has blood cancer; that at the time of his motion she was given a prognosis of 30 months; and that he is needed to provide care for his minor daughter.  (Dkt. #556 at 8).  "The animating principle of [U.S.S.G. § 1B1.13(b)(3)] is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver."  *United States* v. *Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020).  And while courts have granted compassionate release motions predicated on family circumstances, the evidence of the defendant's criticality to the preservation of the family unit in those cases is far more substantial than that presented here.  *See, e.g.*, *United States* v. *Messina*, No. 11 Cr. 31 (KAM), 2024 WL 2853119, at *6 (E.D.N.Y. June 4, 2024) (collecting and distinguishing cases in which motions were granted because of family circumstances).  Although the Court is sympathetic to the situations faced by Mr. Rodriguez and his wife, the record before the Court does not establish that he is the only available caregiver for his minor

daughter.  (Dkt. #556 at 8 (noting "numerous other members of Mr. Rodriguez's family")).  Moreover, the Court understands from Mr. Rodriguez's Presentence Investigation Report ("PSR") that the youngest of his four children is now, or soon will be, 18 years old, and that Mr. Rodriguez has three other children in their late twenties who could provide emotional or other support. (PSR ¶¶ 183-184, 186).

Moving from the negative issues to the positive, Mr. Rodriguez relates that he has made a continual effort to improve himself while detained, which has included taking more than 700 hours of educational programming, learning English and business skills, and serving as tutor and mentor to other inmates.  (Dkt. #556 at 7-8).  The Court acknowledges that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t), but that a court may consider rehabilitation in combination with other factors in determining whether there are extraordinary and compelling reasons for a sentence reduction, U.S.S.G. § 1B1.13(d).  The Court commends Mr. Rodriguez for using his time productively while incarcerated.  However, courts have generally found that participation in such programming is neither exceptional nor unusual.  *See, e.g.*, *United States* v. *Muyet*, No. 95 Cr. 941 (LAP), 2024 WL 2830825, at *5 (S.D.N.Y. June 3, 2024) (collecting cases); *United States* v. *Frazier*, No. 17 Cr. 364-7 (CS), 2023 WL 2139520, at *1 (S.D.N.Y. Feb. 21, 2023) (same).  This Court agrees, particularly given the severity of the conduct of conviction.

Finally, Mr. Rodriguez asks the Court to reconsider his sentence in light of (i) the sentences imposed on his co-defendants who cooperated or pleaded guilty and (ii) the proscription on stacking of Section 924(c) sentences contained in the First Step Act. (Dkt. #556 at 7). While the Second Circuit has not foreclosed the possibility that a disparity in sentences could constitute an extraordinary and compelling reason, its most recent treatment of these issues undermines Mr. Rodriguez's claims. In *United States* v. *Fernandez*, 104 F.4th 420, 428-29 (2d Cir. 2024), the Court specifically rejected Section 3582(c)(1) claims predicated on the differences between a defendant's sentence and the sentences imposed on cooperators and co-defendants who elected not to proceed to trial. *See id.* at 428 ("It is not 'extraordinary' (indeed, it should be expected) that a defendant who proceeds to trial and is convicted receives a longer sentence than his co-defendants who plead guilty to different crimes, accept responsibility, and assist the government by cooperating.... And lower sentences for cooperating defendants are explicitly contemplated by the sentencing statute, *see* 18 U.S.C. § 3553(e), and the Sentencing Guidelines, see U.S.S.G. § 5K1.1." (internal citations omitted)). More broadly, the Court found nothing extraordinary or compelling about the disparities in sentences among Fernandez's co-defendants. *Id.* ("Disparities between the sentences of coconspirators can exist for valid reasons, such as ... the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." (citing *United States* v. *Conatser*, 514 F.3d 508, 522 (6th Cir. 2008))).

The Court has also considered whether the length of Mr. Rodriguez's aggregate sentence, in and of itself, supports a finding of extraordinary and compelling circumstances under the 2023 Guidelines amendments. Mr. Rodriguez's aggregate sentence of life plus 32 years certainly qualifies as an "unusually long sentence," and Mr. Rodriguez has served more than 10 years of that sentence. *See* U.S.S.G. § 1B1.13(b)(6). The First Step Act did effect a change in the law, albeit a non-retroactive one, that would have foreclosed the Court's ability to impose a 25-year consecutive term on the second Section 924(c) count. However, given the multiple terms of life imprisonment that Mr. Rodriguez received, the changes wrought by the First Step Act would not "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," and thus do not qualify as an extraordinary and compelling circumstance. *Cf. Al-'Owhali* v. *United States*, 36 F.4th 461, 463 (2d Cir. 2022) ("We hold that a court may exercise its discretion under the concurrent sentence doctrine to decline to review the merits of a claim on collateral review when the challenged conviction's sentence runs consecutively to one or more unchallenged life sentences.").

In sum, the Court has carefully considered Mr. Rodriguez's proffered bases for a sentence reduction, individually and in tandem, and has specifically considered them in light of the more expansive interpretation of "extraordinary and compelling circumstances" set forth in the amended U.S.S.G. 1B1.13. Ultimately, it concludes that Mr. Rodriguez has not met his burden of demonstrating a basis for a sentence reduction.

### b.    The Section 3553(a) Factors Counsel Against a Reduction in Sentence

Even were the Court to have found that one or more of Mr. Rodriguez's reasons amounted to "extraordinary and compelling," it would still deny his motion after considering the factors set forth in 18 U.S.C. § 3553(a).  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."  *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C).

The undersigned did not preside over Mr. Rodriguez's trial and sentencing.  It did, however, review the transcripts of those proceedings to familiarize itself with the details of the criminal case.  At trial, the Government presented a wealth of evidence — from victims, law enforcement officers, and cooperating witnesses — of violent kidnappings and robberies.  Mr. Rodriguez was personally involved in many of these robberies, typically as the driver, and at least once as the *santero*, or tipster.  And despite what Judge Keenan described as "overwhelming" proof of guilt at his trial, Mr. Rodriguez refused to accept responsibility, and maintained even at sentencing that "there was no evidence against him."  (Dkt. #278 (sentencing transcript) at 4, 7).  Even today, Mr. Rodriguez refers to himself as "only the driver."  (Dkt. #556 at 7).

In its sentencing recommendation, the Probation Office recommended concurrent terms of life imprisonment on those counts that had a statutory

maximum of life (Counts 2, 5, 11, and 15); concurrent terms of 20 years'
imprisonment on those counts with a lower statutory maximum term (Counts
1, 4, and 7-10); and mandatory consecutive terms of 7 years' and 25 years'
imprisonment on Counts 6 and 12, respectively.  (PSR at 42).  The Probation
Office justified this severe sentence with reference to the abject brutality of the
conduct in which Mr. Rodriguez and his confederates engaged:

> Based on the above information, the defendant appears
> to pose a high risk of recidivism.  Rodriguez's stint in
> prison between 2005 and 2007 failed to act as a
> deterrent as he immersed himself into the instant
> offense a little more than a year after being discharged
> from parole.  Moreover, the seriousness of the acts
> committed by the defendant and the other participants
> cannot be underscored.  Rodriguez was involved in a
> string of robberies that terrorized victims over four
> counties.  During these robberies, and in some
> instances, they brandished firearms and BB guns,
> stabbed one victim repeatedly (Victim-16), beat victims,
> including using a wrench (Victim-12), kidnaped and
> restrained victims, stripped one victim naked (Victim-
> 13), and stole kilograms of cocaine and heroin, as well
> as property, including a robbery that netted
> approximately $3.5 million in cash.  It is highly unlikely
> that restitution will be fully satisfied for any of the
> victims in this case.  Furthermore, the defendant's
> actions exhibited a wanton disregard for the dignity and
> value of an individual's life.

(*Id.*).  While acknowledging that the Guidelines "are only advisory and not
binding" (Dkt. #278 at 12), Judge Keenan sentenced Mr. Rodriguez in
accordance with that recommendation (*id.*).

    Twice, Judge Keenan was given an opportunity to reduce Mr. Rodriguez's
sentence, and twice he declined to do so; even assuming a showing of
extraordinary and compelling circumstances, Judge Keenan concluded that a

reduction would do a disservice to the Section 3553(a) factors. *Rodriguez 3582 Opinion*, 2021 WL 37689, at *4 ("the Court finds that modifying Rodriguez's term of incarceration would disserve the above important sentencing factors"); *Rodriguez 3582 Reconsideration Opinion*, 2022 WL 2801009, at *2 ("Accordingly, the sentencing factors that weigh in Rodriguez's favor, such as the need to provide necessary medical care, are still outweighed by the combined force of the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant." (internal quotation marks omitted)).  Having reviewed the record, this Court concurs in Judge Keenan's assessment of the Section 3553(a) factors, and denies Mr. Rodriguez's renewed compassionate release motion on this basis as well.  Mr. Rodriguez's sentence is indisputably severe, but the length of time over which his criminal conduct persisted, the brutality of that conduct, and the absence of acceptance of responsibility demonstrate that the sentence remains appropriate.

## CONCLUSION

For the reasons set forth in this Order, the Court DENIES Mr. Rodriguez's motions pursuant to Rule 60(b) and 18 U.S.C. § 3582(c)(1)(A)(i). The Clerk of Court is directed to terminate the motions pending at docket entries 556, 557, and 565 in Case No. 11 Cr. 755-3 and at docket entry 17 in

Case No. 20 Civ. 9097; to docket this Order in both cases; and to mail a copy of the Order to Mr. Rodriguez at the following address:

> Jovanny Rodriguez
> Reg. No. 65504-054
> USP Coleman I
> U.S. Penitentiary
> P.O. Box 1033
> Coleman, FL   33521

Additionally, the Court finds that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith; *in forma pauperis* status is therefore denied for the purpose of any appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:  August 28, 2024
        New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge

24